UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Club Y Bar & Grill, Inc.; and
Caryn Brown,

Civ. File No. 00-273 (PAM/RLE)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

County of Cass,

Defendant.

---

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction. Because both parties were present at the hearing, the Court converts Plaintiffs' motion as one for a preliminary injunction. For the following reasons, Plaintiffs' motion is denied.

**BACKGROUND**

The following facts are taken largely from Plaintiffs' Complaint. Plaintiff Club Y Bar and Grill, Inc., is a corporation organized under the laws of Minnesota. Plaintiff Caryn Brown is the owner of a parcel of real estate located at the intersection of Highways 371 and 200 in the unincorporated Township of Shingobee in Cass County, Minnesota. Club Y is the tenant of those premises. Formerly, a bar called "Trails" had operated at that location.

On January 3, 2000, Harold Brown, an officer of Club Y, wrote to Paul Fairbanks, the Cass County Director of the Environmental Services Department and informed him that

FILED FEB 1 1 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD____________
DEPUTY CLERK____________

Club Y intended to "open[] up the old Trails bar with topless dancing and billiard tables...If topless dancing were to be allowed, it would be performed on stage with a minimal amount of contact between dancer and patron . . . Should topless dancing not be allowed we would bikini clad dancers [sic] with no more exposure than what's on Leech Lake in the summer time." (Complaint Ex. A.)

On January 18, 2000, Fairbanks responded to Brown. "As we discussed, Cass County land use regulation considers adult entertainment as a conditional use only in the industrial class. In order to have adult entertainment at the site of the establishment currently known as Trails Bar, a reclassification and a conditional use is required." Fairbanks was referring to Chapter 800 of the Cass County Land Use Ordinance, which consists of a chart listing the appropriate commercial and non-commercial uses allowed within each zoning classification. On that same day, the Cass County Board of Commissioners met and passed an emergency moratorium on adult entertainment anywhere within the county. The Board of Commissioners is now in the process of adopting a comprehensive scheme regulating adult entertainment within Cass County.

Plaintiffs now seek either a temporary restraining order or a preliminary injunction against enforcement of both the moratorium and the general zoning ordinances.

**STANDARD**

Motions for temporary restraining orders in which both the plaintiff and the defendant are present at the hearing, as well as motions for preliminary injunctions, are governed by

the four-part test set forth in Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Under the Dataphase standard, four factors are weighed against each other in determining the propriety of issuing preliminary relief: (1) the threat of irreparable harm to the petitioner; (2) the threat of harm to the respondent balanced against the harm to the petitioner; (3) the likelihood that the petitioner will prevail on the merits; and (4) the public interest. Because Defendant here is a government subdivision, consideration of this final factor is subsumed within the analysis of possible harm to the County.

## DISCUSSION

### A. Likelihood of Success on the Merits.

In order to better frame the discussion of the other Dataphase factors, it is best in this case to begin by considering Plaintiffs' likelihood of succeeding on their claim that the Cass County zoning requirements are unconstitutional. By now, it is well-established that topless dancing is expressive conduct entitled to protection under the First Amendment. See Barnes v. Glen Theaters, Inc., 501 U.S. 560 (1991) (all but Justice Scalia agreeing that nude dancing is protected activity). However, the Supreme Court has also characterized topless dancing as "only marginally" within the outer perimeters of constitutional protection. See id. at 566. A locality cannot completely proscribe topless dancing because of its content–that is, out of some aversion to adult entertainment per se. Localities can, however, regulate such activity in an attempt to stem undesirous "secondary effects" which may arise, such as prostitution, crime, and sexual assaults. As a result, courts have upheld ordinances requiring such

establishments to exist at least 1000 yards from others are constitutional, Young v. American Mini Theaters, Inc., 427 U.S. 50, 62 (1976), and have approved requirements that adult establishments cannot exist within certain distances of schools and residential areas. As long as a zoning ordinance effectively allows adult entertainment somewhere within the locality, it meets constitutional muster.

Plaintiffs first challenge the County's moratorium on all adult-oriented businesses as a facially unconstitutional restraint on freedom of expression because the moratorium allows no topless dancing whatsoever, anywhere within the County. Without deciding the issue, Plaintiffs appear to have a plausible argument in this regard. In Schneider v. City of Ramsey, 800 F. Supp. 815, 823 (D. Minn. 1992), aff'd sub nom. Holmberg v. City of Ramsey, 12 F.3d 140 (8th Cir. 1993), this Court, per Judge Murphy, made it clear that a moratorium which completely prohibits adult uses is facially unconstitutional because it leaves open no alternative channels for communication. In fact, the moratorium at issue in Schneider was even more reasonable than Cass County's moratorium, because the former terminated automatically after 180 days.

The County raises City of Crystal v. Fantasy House, Inc., 569 N.W.2d 225 (Minn. App. 1997) as support for the constitutionality of its moratorium. Fantasy House, however, is unconvincing. That case involved two ordinances: an interim moratorium that prohibited any adult establishment from opening within 1000 feet within a number of enumerated locations, and a permanent ordinance, effective two months later, that effectively limited

adult establishments to .9% of the land in Crystal. The Fantasy House court did not seriously consider the constitutionality of the interim moratorium, holding instead merely that it was specifically authorized by Minn. Stat. § 462.355, without examining whether the moratorium could stifle rights guaranteed by the First Amendment. Fantasy House's discussion of the First Amendment took place in the context of the permanent zoning ordinance, which need not be examined at this time.

The moratorium, however, is not the ultimate issue in this case. Even if this Court were to eventually declare the moratorium unconstitutional, that would do little to advance Plaintiffs' ultimate interests. Plaintiffs must also contend with the zoning restrictions in Chapter 800, which allows adult uses only in an area zoned "industrial," and there only with a conditional use permit. Because Club Y is located in a general use zone, rather than an industrial zone, it must also successfully challenge Chapter 800 in order to prevail. Plaintiffs' most compelling contention in this regard argues that requiring a conditional use permit to dedicate property to an adult use is unconstitutional. This argument carries some weight–up to a certain point.

> It is settled by a long line of recent decisions in this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official–as by requiring a permit or license which may be granted or withheld at the discretion of such official–is an unconstitutional censorship of prior restraint on the enjoyment of those freedoms.

Staub v. City of Baxley, 355 U.S. 313, 322 (1958). In order for a permit requirement to be valid in an area relating to the First Amendment, it must include narrow, objective, and

definite standards to guide the licensing authority. See Wolff v. City of Monticello, 803 F. Supp. 1568, 1573 (D. Minn. 1992), citing Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51 (1969). The level of definiteness must be so clear that "the decision to grant or deny a license application [is] virtually a ministerial one." Swearson v. Meyers, 455 F. Supp. 88, 91 (D. Kan. 1978). See also Mga Susu, Inc. v. County of Benton, 853 F. Supp. 1147, 1152 (D. Minn. 1994) (striking permitting ordinance that granted permit if proposed use was "consistent with the purposes" of the zoning code, would not "have an adverse effect on adjacent properties," and was "reasonably related" to existing properties.")

Against this backdrop, it is likely that Cass County's existing conditional use standards are unconstitutional as applied to topless dancing. In relevant part, those standards provide that a conditional use permit may be granted if the Planning Advisory Commission finds that (1) "the conditional use will not be detrimental to the use and enjoyment of the environment or of other properties," and (2) "the location and character of the proposed development are considered to be consistent with a desirable pattern of development for the locality in general." Cass County Land Use Ordinance, Section 504.01(e)(1) and (2). This language could scarcely be less definite and narrow than it already is. It provides absolutely no objective standards to guide the Commission. "No adult use shall be located within 1000 feet of a school" may be constitutionally sufficient language; "detrimental to the use and enjoyment of other properties" is decidedly not. Under these standards, there is simply too great an opportunity for decisionmakers to give weight to their own personal opinions and

inhibit protected activity based on its content alone. See, e.g., Lady J. Lingerie v. City of Jacksonville, 176 F.3d 1358, 1362 (11th Cir. 1999).

Although Cass County's permit requirement may be unconstitutional, it does not follow that the overall restriction of adult uses to the industrial zone in Chapter 800 is as well. At the hearing on this matter, Plaintiffs argued that they viewed the conditional use standards as inseparable from the limitation on the acceptable locations for adult uses: if the conditional permitting standards are invalid, the restriction of adult uses to the industrial zone are as well. In deciding whether an unconstitutional provision is severable from others related to it, the focus is on whether the legislative body would have enacted the other provisions without the benefit of the part deemed invalid. See Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987). Severance cannot occur if "the balance of the legislation is incapable of functioning independently." Id.

Under the Brock test, it is likely that the conditional use standards are severable from the overall restriction of adult uses to the industrial zone. First, the overall restriction is certainly capable of functioning without the conditional use provisions. If severed, the remaining ordinance would simply open the entire industrial zone to adult uses. Although unclear, it is also very possible that the Cass County Board of Commissioners would still have restricted adult uses to the industrial zone, even without the additional requirement of a conditional use permit. Under Section 800 in its existing form, none of the existing allowed uses in the industrial zone are of a nature which would merit extraordinary concern

about the potential secondary effects which could stem from topless dancing. Knowing that they must allow topless dancing somewhere within the county, the Board of Commissioners could have well decided that generally limiting adult uses to industrial areas was an appropriate solution. In fact, the County's proposed Ordinance for the Regulation of Adult Uses and Sexually Oriented Businesses (February 2, 2000) appears in large part to allow adult uses in even more areas than the industrial zone, by merely forbidding adult uses from locating within 1320 ft. of another adult use, and within 1320 feet of a church, school, park, day care, or library. (See Proposed Ordinance for the Regulation of Adult Uses and Sexually Oriented Businesses, Feb. 2, 2000, Section 3.9(A) and (B)). It is very possible, if not likely, that many of these locations will not be located within areas zoned for industrial purposes only.

Because the conditional use permit requirement is severable from the restriction of adult uses to the industrial zone, it appears unlikely that Club Y will succeed on the merits.

**B. Harm to Plaintiffs**

If preliminary relief does not issue, the potential harm to Plaintiffs would appear to be real, yet at the same time unsatisfactory for purposes of seeking preliminary relief. If this motion is denied, Club Y will not be allowed to open or, if it does, it will face criminal prosecution. Plaintiffs plainly admit why they want to open as soon as possible: they hope to be in business when the new Cass County adult use ordinances are put into effect, in order to be waived in as a prior nonconforming use. See Proposed Ordinance Section 3.7

(allowing nonconforming uses to remain in business in their current state). However, there is constitutional or legal right for a business which is not yet open to be designated a prior nonconforming use, and thereby enjoy privileges other businesses do not. Furthermore, Plaintiffs appear to have explicitly contemplated the possibility of having their entertainers wear bikinis and other appropriate public attire–a development which Fairbanks explicitly informed Plaintiffs would not implicate land use regulation. (See Complaint ¶¶ 7-8.) Thus, although Plaintiffs may truly desire to feature topless dancing at their establishment, they have manifested a willingness to settle for a second-best alternative as well.

**C. Harm to Defendant.**

On the other hand, the harm which will befall the County and the public if preliminary relief is ordered is potentially significant. If allowed to open, Plaintiffs' business would likely be designated a prior nonconforming use once the County enacts its new ordinances regulating adult entertainment. The first obvious consequence is that the County's new zoning ordinance would be rendered largely ineffective from the start, because of the nonconforming use. In this particular case, that anomaly could pose very serious problems. Club Y is currently zoned for "general use." In that area, almost every type of establishment is permitted–some explicitly, some with conditional use permits. These include single-family residences, day care centers, foster homes, and health care facilities. See Cass County Zoning Ordinances Chapter 800. The secondary effects which may stem from topless dancing could pose very serious problems around these types of uses.

**CONCLUSION**

On the whole, the harm the County would suffer from granting preliminary relief outweighs the harm Plaintiffs would suffer if such relief is denied. When coupled with the fact that Plaintiffs are unlikely to succeed on their constitutional challenge to the restriction of topless dancing to areas zoned for industrial uses, this Court sees no compelling reason why preliminary relief should issue at this time.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Preliminary Injunction (Clerk Doc. No. 2) is **DENIED.**

Dated: February 10, 2000

Paul A. Magnuson
United States District Court Judge